Judge ¡Wills
delivered the opinion of the Court.-
ON the 4th of March, 1782, Thomas Madison and Anthony Gholson entered into articles of agreement, to the following effect:
“Articles of agreement, between Thomas Madison of the one part, and Anthony Gholson of the other, witnesseth, that the said Madison has sold to the said Gholson, one thousand five hundred acres of land, in the Kentucky country, in Lincoln county, located by Gabriel Madison, to be of equal value and quality of any that is laid for the said Madison; if the said Ghol-son does not choose any that is now located, and as the said Madison has^ other warrants , not located, he is to have 1,500 acres of any that may hereafter be laid, to be of equal value and quality of any that may be so laid. The said Madison is to give land dear from the claim of any individual, and the said Ghol-son to run the risk of the claim of congress, or any *582 other government. The land is to be surveyed at ^le expense of said Madison, it is the meaning of both parties, that the 1,500 acres is to be part of the warrants sent to Gabriel Madison, and which he himself, or any other person for him. has located, for the consideration of a wagon and hind gears, my choice of twenty of his hogs, and ten acres of rye, on Moses Tally’s land and Mr. Robinsons.” This writing was signed and sealed by the parties, on the day of its date.
On the 2d day of October, 1782, Gholson sold 400 acres out of the 1,500, to Robert Raker, and gave a separate writing, binding himself to convey it, according to his article of agreement with Thomas Madison.
On the 28th of August, 1784, Gholson assigned the whole of his article witlrThomas Madison, for the 1,500 acres, to Caleb Wallace, reciliugin the assignment, that Baker was' to have his 400 acres out of it, by Wallace’s permission.
On the 18th of September, 1799, Wallace, Baker and Gholson united in commencing their suit in chancery, against the executors and heirs of said Thomas Madison, for a specific performance of the contract. As to the 400 acres belonging to Baker, it is charged in the bill, that it has been surveyed and laid off to him, part of a tract of 1,532 acres, in the name of said Thomas Madison, and that be had taken possession of it, with the assent of all concerned. As to the remaining 1,100 acres, belonging to' Wallace, it is objected that the residue of the tract, out of which Baker has taken his share, does not comply with or come up to the contract, because it is covered by-others, and of no value; that the warrants sent to Gabriel Madison, cannot be found, and that there is not land to fulfil the article. A conveyance i$ prayed for, to be made to Baker, for his 400 acres, and also to Wallace for the 1,100 acres, if such tract can be shown, if not, then the value of the land.
One of the executors of Madison answered the bill, exhibiting the patent out of which Brdcer’s 400 acres was taken, and insists that the residue thereof «aghtio satisfy Wallace, or that there is land belong *583 ing to the estate to do fo. The heirs, or some of them, answered by special guardian.
On the destruction of the district court, this cause appeared on the docket of the general court. How it came there, the'record is silent.
At the December term, 1807, of the general court, a decree is entered by consent of all the parties, in favor of Baker, giving him the 400 acres which had been surveyed for him, and providing that the cause should progress as to the 1,100 acres, Wallace’s interest, without any prejudice thereto. The cause progressed as-between Wallace and Gholson on one side, and Madison’s representatives on the .other, till at the May term, 1810, of the general court, a jury was empannelled, and charged by the court to inquire into the value of the 1,100 acres of land, at-the death of the said Thomas Madison, and they found the value to be 5,000 dollars, and a final decree in favor of Wallace, was entered accordingly.
Afterwards, at the August term, 1823, in the general court, an order to this effect appears in the cause:-
“On the motion of the defendants, by their counsel, it is ordered that the decree heretofore pronounced in this cause, be opened and set aside; and leave is given the defendant, Agatha Bayer, to file her answer, which is filed accordingly, and the court dispensing with bond fpr compliance with the decree, because it appears that the former decree has been satisfied.”
The answer of Henry Bayer, and Agatha his wife, was accordingly filed, and the cause appears to have remained on the docket of the court below, till the August term, 1826, when the court appears to have rescinded the order of August, 1823, and to have stricken the cause from the docket, as to Wallace and Gholson, and the defendants excepted.
The executors and heirs of Madison, have issued their writ of error, to reverse the original decree, and also a writ of error to reverse the latter order of the court, of August term, 1826; and both these writs are now the subject of consideration.
The first question presented to us, on the writ, to reverse the original decree, is, that the general court *584 had not jurisdiction of the cause, and that the proceedings so far as they have progressed in that court, are coram non judies.
When title or bounds come in controver-partíeTo/re-cord, will give jurisdiotion $>’frt”Cra
The pleadings do not contain those allegations of residence of the parties, which is necessary to give jurisdiction to the general court, and if the question 0f jurisdiction is to.rest on that point, the decree cou^ not be sustained. See Ormsby vs. Lynch, Littell’s Select Cases, 303. But at that time the general court might take jurisdiction, by consent of par-hes, when the title or bonds for land came in question, as is the case here. That consent, it is true, is required to be in writing, and signed by the parties. But it has been held by this court, in the case of Fowler vs. Halbert, III. Bibb, 384, that consent given of record, could and would answer as a substitute for the writing, executed by the parties, and certainly tio stronger substitute could be given of record, than is here given. This contract is an entire thing; Gholson, Baker and Wallace all properly joined in the bill, and Baker and Wallace, after a decision on the whole contract, could each draw their respective portions. Here the parties have, by consent, disposed of 400 acres, part of the contract, by a decree, leaving the rest unprejudiced, for further litigation. All must be heard and decided in the sainé court. This decree, as to Baker, is valid, and is not before us. If we were to turn Wallace’s part of the contract out of court, for want of jurisdiction, we should split, one cause of suit into two, and render it difficult for Wallace’s representatives to proceed, in any other tribunal, with part of the controversy there. The consent here is full, that a part of the contract shall be settled in the general court, and the other part progress without prejudice. The consent is, therefore, complete.
The next questions affect the regularity of the proceedings. Anne Madison, one of the heirs of Thomas Madison, deceased, it is suggested, had departed this life, and the cause, as to her, is ordered to abate, and it is insisted that the cause ought to have been revived as to her representatives. On the other hand, it is contended that as she was one of the heirs, her interest went, as a matter of course, to her co-heirs, *585 and, therefore, a revivor was unnecessary, as she died an infant, and with her name unchanged, she could not be presumed to have either had issue or to have made a will.
Suggestion, {¡gathoffé heir'of def’t. who rename to her not^is^nse w°th iieccsify of revivor a-gai?3t be,r.re" prejen A !VI?S’
aá boTp’pointed by order of Number of in’! fant heirs, J should ap-from re“
sentatives of below’ perly before inferior court, j^j^oferror further process to bring them ^court* o”' return of ** cause, will bé nnnecesta^,
We conceive that a bill of revivor, on her death, ought to have been filed, or that better cause should have been shown for dispensing therewith* than can be gathered from the record.
It does not appear that she was an infant; fore, she might have died with a will. Moreover, her interestin the land in question, or in the estate °f her father, depended upon his will, which is not before us, and it might have passed by that instrüment'; otherwise, on her death. Besides, her personal estate, if she had any, ought first to have been subjected to this demand, if it is to be converted into money, and her personal representatives, if she had such estate, might, in that event, become accessory. Knowing so little as this record presents, with regard to her circumstances at the time, of her death, or what became of that portion of her estate, which passed from her father, or that which she otherwise held, we cannot say that this error is not well assigned.
Again, George Madison has answered as special guardian for the infant heirs of Thomas Madison, There is no order of court appointing him to that office, and we cannot tell how many of the heirs were infants, if any, by any thing apparent in the record.
As the cause must be opened for these ties, and be sent backaigdin, to commence at an early stage of it, and as Madison’s representatives, by prosecuting their writ ot error here, will all have appeared, in the cause, só that further proceedings to bring them before the court, will be unnecessary, and as the merits of the case may bé essentially changed, and even the land itself, or a specific performance of the contract, may again occur, we do not deem it necessary to say any thing on the main question; and that is the criterion of damages, for the breach of the contract, which has appeared to be the main object of the writ of error,
■If vendor is unable to convey, and has been -guilty of no fraud, criterion of damages, is value ofland, at date of contract, to be ascertained by purchase money, and interest thereon. But, if vendor has been guilty of fraud, then in- ' creased value of land at date of assessment, is '-measure of damages.
■Jill pl’tffs. in tvrit of error, must, at rendition of de-dedree, labor under disabilities, or rights of none, are saved out of statute of limitation. •AUter for-■iaerly.
We shall only remark, that we cannot, under -any state of case, see the propriety of fixing the value of the land, at the death of Thomas Madison, the cove-nantor, as the proper criterion, as the court below has done.
If the case should be stripped of all fraud on his part, and that of his representatives, then, according to a well settled course of adjudication, the criterion of damages for a breach, would be the value of the land at the date of the contract, and that value to be ascertained, if practicable, by the evidence of what was given for it, with interest thereon. On the contrary, if the covenantee was guilty of fraud, in making the contract, or he, or his representatives since his death, should have fraudulently disabled themselves to fulfil it, then the increased value at the date of the assignment, ought to be adopted.
In settling this controversy after its return to the court below', great difficulties may arise, after so great lapse of lime, which has swept from existance, those who were acquainted with the circumstances as well as the parties thereto, and much of that time has passed-, since the decree of the court below, which has now to be reversed. Aware of this, the defendants in error have pleaded the statute of limitations; but this has been overruled, because, at the date of the decree, one of the plaintiffs in error was, and still is, a feme covert, to-wit: Mrs. Bayer, a daughter of the covenantor, Thomas Madison, because, as the law stood at the dateof the decree, if any of the parties labor under a disability, the right of the whole was saved. Since then the law has been altered, and now, by the construction of this court, all the parties plaintiff,‘must, at the time of the decree, be under disability, or the rights of none are saved. This •case furnishes a lively demonstration of the policy of the alteration of the law', as well as the propriety of the construction of tire amendatory act, adopted by this court. For we cannot help foreseeing the inconvenience, danger and even distress which may ensue to some of the parties concerned, by disturbing this decree, at this late hour. But, however, great the evils arc, which may arise from it, this court, not hav- *587 ingthe power óf legislation in its hands, cannot prevent or avoid them.
Court has no power to open decree, 13 years after its rendition, even to let in answer of defendant, who was, at its rendition,. and during whole 13 years, a nonresident feme covert.
.Note. Chief Justice Bibb did not sit in thjs case»
Denny and Mayes¡ for plaintiff; Crittenden^. for defendants.
As to the writ of error to reverse the order of the court, which struck the cause from the docket, by its last order, but little need be said. There was no power in the courtto open and set aside its--decree, by the order of August, 1.823; because the cause was long out of court, and the decree could not be again altered in that tribunal. It is in vain to say that Bayer and wife were non-residents, for they did not appear in that character; and if they had, the seven years allowed by statute, within which time they could contest the decree, had expired, and one of several defendants in a joint claim, ought not to have been permitted to disturb the decree.
In the first writ of error to the original decree, the decree must be reversed with costs, and the cause be remanded for new proceedings, not inconsistent with this opinion.
In the last writ to reverse the order of the court, striking the cause from the docket, it must be affirmed, with costs.